UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                     NO. CR. S-10-061 LKK

       Plaintiff,

   v.                     O R D E R

FREDERICK SCOTT SALYER,

       Defendant.
_____/

Michael D. Celio, a partner at the law firm Keker & Van Nest ("KVN"), and Robert A. Van Nest, a named partner at KVN, have represented Mark S. Grewal since on or about May 13, 2010. The government asserts that Grewal is a potential witness against defendant Scott Salyer in this criminal proceeding.[1] On July 6, 2011, John W. Keker, another KVN[2] named partner, entered his

---

[1] Salyer was the CEO of, and Grewal was an employee of, SK Foods, L.P., during the time period of the alleged activities described in the government's indictment of Salyer.

[2] The court refers to Mr. Keker as "Keker," and Keker & Van Nest as "KVN."

appearance as counsel for Salyer.[3]  The government, having first notified Keker of its concerns regarding this engagement, has now moved to disqualify KVN from representing defendant Salyer in this matter.

The crux of the government's motion is that KVN cannot represent both the defendant, and the potential witness against that defendant.  Keker asserts[4] that because Grewal is not adverse to Salyer, there is no conflict, and even if there is a conflict, they both waive their right to conflict-free counsel.  For the reasons set forth below, the government's motion is DENIED.

**A.  THE SIXTH AMENDMENT**

"The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.'"  Wheat v. U.S., 486 U.S. 153, 158 (1988); U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006).  "[A]n element of this right is the right of a defendant ... to choose who will represent him."  U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006), citing Powell v. Alabama, 287 U.S. 45, 53 (1932); U.S. v. Rivera-Corona, 618 F.3d 976, 979 (9th

---

[3] Appearance of Counsel (Dkt. No. 334).  Previously, on May 18, 2011, Keker had advised the court that he was "in the process of making final arrangements to represent defendant Salyer," representing Salyer in May 2010.  Minutes (Dkt. No. 310).

[4] It is more common to refer to the client as making the arguments in court proceedings.  In this case, the court is simply acknowledging the reality that the representations made by counsel in this type of motion are known directly by counsel, and therefore are attorney representations, not simply an argument based upon his client's position.

Cir. 2010) (recognizing defendant's right "to be represented by the attorney *of his choice*") (emphasis in text).

"[T]he Sixth Amendment also guarantees each criminal defendant the right to assistance of counsel 'unhindered by a conflict of interests.'" U.S. v. Wheat, 813 F.2d 1399, 1402 (9th Cir. 1987), aff'd, 486 U.S. 153 (1988); Houston v. Schomig, 533 F.3d 1076, 1081 (9th Cir. 2008) (defendant has a right to "conflict-free counsel"), cert. denied, 555 U.S. ___, 129 S. Ct. 1346 (2009), citing Strickland v. Washington, 466 U.S. 668, 688 (1984).

The defendant has the right to waive his right to representation by conflict-free counsel, Holloway v. Arkansas, 435 U.S. 475, 483 n.5 (1978), thus preserving his right to the counsel of his choice. That waiver must be given "knowingly and intelligently," however Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001), citing Edwards v. Arizona, 451 U.S. 477, 482 (1981). If the waiver fails this test, it is invalid. See U.S. v. Stites, 56 F.3d 1020, 1025 (9th Cir. 1995) (defendant was incapable of giving a valid waiver), cert. denied, 516 U.S. 1138 (1996).

That is not the end of the inquiry, however, because the law now permits the district court to refuse, or override, the defendant's knowing and intelligent waiver, Wheat v. U.S., 486 U.S. at 164, thus depriving him of the counsel of his choice, after all. Rivera-Corona, 618 F.3d at 979 (in general, the defendant "may have the counsel of his choice unless a contrary result is compelled by 'purposes inherent in the fair, efficient and orderly

3

administration of justice'"), quoting <u>U.S. v. Ensign</u>, 491 F.3d 1109, 1115 (9th Cir. 2007), <u>cert. denied</u>, 552 U.S. 1313 (2008). However, the district court "must recognize a presumption in favor of petitioner's counsel of choice." <u>Wheat</u>, 486 U.S. at 164.

In sum, it is the job of this court, first and foremost, to give effect to the defendant's constitutional right to the counsel of his choice. Where a conflict of interest is alleged to exist, the court must determine whether there is, in fact, a potential conflict. If there turns out to be no potential conflict, then there is no basis for depriving the defendant of the counsel of his choice, and the disqualification motion must be denied. If there is a potential conflict, the court must determine whether the defendant's waiver of his constitutional right to conflict-free counsel was "knowing and intelligent."[5] If the waiver fails this test, it is invalid, and the disqualification motion must be granted (in the absence of some other reason to deny it). If the waiver was "knowing and intelligent," the court must then decide whether there are sufficient grounds to refuse it, keeping in mind the "presumption" in favor of allowing the defendant the choice of his own counsel.

Given the intricate back-and-forth between rights, presumptions, waivers and refusals, it seems worthwhile to pause, however briefly, to consider the realities here. The defendant is

---

[5] Other descriptions for how the wavier must be given are "freely" and "voluntarily." See <u>U.S. v. Stites</u>, 56 F.3d 1020, 1025 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1138 (1996).

4

facing a 60-page indictment charging him with, among other things, conspiracy in restraint of trade ("anti-trust"), 15 U.S.C. § 1, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) and violations of the laws prohibiting the fraudulent deprivation of the "intangible right of honest services," 18 U.S.C. §§ 1343 and 1346.[6]  Second Superseding Indictment (Dkt. No. 365).  He has engaged KVN as *additional* counsel to assist him with his criminal defense.  KVN's sixty-plus attorneys and its support staff would add substantial resources to his current legal team, the excellent four-attorney firm Segal & Kirby.  Both firms, on their respective websites, tout their experience in defending "white collar" criminal cases.  But only the KVN website touts the firm's specialty in complex, criminal anti-trust cases.  This adds substantial credibility to Salyer's claim that the ability to add KVN – the counsel of this choice – to his defense team, is critical to him in what he calls "the fight of my life."[7]

### B.    Potential Conflict of Interest

#### 1.    Keker's access to Grewal's information

At first glance, the existence of a potential conflict seems obvious.  The government asserts that it plans to call Grewal as

---

[6] In addition, the company of which he was the CEO – and the alleged criminal enterprise – has filed for bankruptcy.  There are a multitude of proceedings in bankruptcy court, as well as bankruptcy appeals to this court.

[7] As the court noted at the hearing, the government has more lawyers representing it in this case than there are in the Segal and Kirby firm.

a witness against Salyer. Grewal's attorney, Celio, is the law partner of Salyer's attorney, Keker. Celio became Grewal's attorney on or about May 13, 2010. At that time, there was no structure in place to prevent Salyer's future attorney, Keker, from obtaining confidential information about Grewal. Indeed, there was no reason to prevent any such possible exchange of information, since Keker at that point did not represent Salyer. Keker did not announce his intention to represent Salyer until a year later, on or about May 18, 2011. Therefore, even though no such information was actually exchanged, the court finds that there is the appearance of a potential conflict of interest here.[8]

Accordingly, unless some other factor weighs sufficiently against it, the court must find that there is a potential conflict here.

## 2. Grewal's anticipated testimony.

Keker asserts that there is no conflict because Grewal is not adverse to Salyer. There is no conflict if Grewal and Salyer have a unity of interest in regard to this proceeding. This argument cannot win the day for Salyer, however. The court simply has no way of knowing whether Grewal will be called to the stand, and if he is, whether that testimony will help Salyer's defense, hurt it, or be neutral in that regard. Both sides have provided the court with FBI notes of its interviews with Grewal. Salyer says the

---

[8] At the hearing on this motion, the court examined Keker to determine if any such information was in fact exchanged. The court is satisfied that no information was exchanged.

notes clearly show that Grewal will testify that Salyer never violated the law or asked him or anyone else to do so.  The government says the notes clearly show that Grewal will testify that he and Salyer conspired together to violate the law.

The court has reviewed both set of interview notes, and cannot say with any certainty how Grewal will testify if called to the stand.  Notwithstanding each side's faith in their abilities to predict Grewal's testimony, in reality neither side knows for certain what Grewal will testify, once called to the stand and placed under oath.

Accordingly, Grewal's anticipated testimony does not weigh in favor of, or against, either side in this motion.

**3.    Grewal's purported cooperation with the government.**

The government asserts that Celio offered to provide testimony from Grewal implicating Salyer in illegal activity.  Celio denies it.  Both sides have provided declarations claiming that a proffer was made, and claiming that no proffer was made.  Once again, the court is not in a position to determine which set of declarations is correct.  Accordingly, Grewal's purported cooperation with the government does not weigh in favor of, or against, either side in this motion.

**C.    Waiver of the Conflict**

Salyer waived his constitutional right to conflict-free counsel.  The disclosures leading to the waiver are everything one could ask for.  Salyer was advised fully about the potential conflict, he was provided with the *government's* letter to Keker

7

explaining its view of the conflict and why, in the government's view, it could not be waived. He was advised to reflect on the proposed waiver, and to seek independent counsel before making up his mind.

At the hearing on this motion, Salyer was sworn and examined by the court on his waiver. Salyer's answers revealed again that his waiver was knowing, willing and intelligent. The government wisely does not challenge the waiver as defective in any way.[9] The court finds that Salyer knowingly, willingly and intelligently waived his right to conflict-free counsel.[10]

## D.    Acceptance or Refusal of the Waiver

The Supreme Court and the Ninth Circuit make clear that this court is granted "substantial latitude" in determining whether to refuse the waiver of conflict-free counsel. Wheat, 486 U.S. at 163; U.S. v. Stites, 56 F.3d 1020, 1024 (9th Cir. 1995), cert. denied, 516 U.S. 1138 (1996). However, there is not much guidance on what standard the district court applies, or even what factors the district court considers, in making this decision.

Some factors are known. The waiver will be refused if it

---

[9] The government does note that the Supreme Court in Wheat expressed concern that attorneys "may not convey all of the relevant information to their clients in obtaining such waivers." Motion at 11. But the government does not allege that any such failure occurred in this case.

[10] Grewal also waived the conflict after full disclosure by Celio. At the hearing on this motion, the court requested that the court's examination of Salyer also be put to Grewal to confirm the quality of his own waiver of conflict-free counsel. Celio represents that the court's questions were put to Grewal, who thereupon re-affirmed his waiver.

8

appears that there is a "significant potential for misuse of privileged information," for example by using it to cross-examine the former client. See U.S. v. Wheat, 813 F.2d at 1403. The waiver will also be refused if the potential conflict creates a division of loyalties such that the attorney "is incapable of diligently representing his client." Id. at 1402. Accordingly, this court will look at the facts of this proceeding so far, and balance Salyer's interest in the attorney of his choice, and the possible risks to him, to Grewal, and to the integrity of the court system if a conflicted counsel is permitted to represent him.

### 1.    Grewal's confidential information

KVN asserts that it has established procedures to ensure that no confidential information obtained from Grewal can be used against him. Specifically, KVN says that it has constructed two ethical walls. For the first wall, KVN asserts that it "has created an ethical wall to screen" Celio and his partner, Robert Van Nest, "who has also done work on Mr. Grewal's behalf," from the Salyer engagement. Amended Celio Decl. ¶ 14 (July 29, 2011) (Dkt. No. 356).[11] In addition, according to KVN, there have been no discussions between Celio and Van Nest on the one hand, and Keker on the other, regarding Grewal's anticipated testimony. Id. ¶

---

[11] Keker asserts that upon being hired by Salyer, KVN "immediately implemented an ethical wall screening Mr. Celio from Mr. Salyer's engagement. (Celio Decl., ¶¶ 13, 14)." The Celio Declaration does not state that this happened "immediately." Nevertheless, the court will accept that this happened "immediately," as a representation of counsel, Mr. Keker, of a matter within his personal knowledge.

9

13.[12]  Celio and Van Nest have no access to "documents, pleadings
or information" pertaining to the Salyer matter, according to
KVN.[13]  Id., ¶ 14.  The documents from the respective clients have
been "prominently" marked to "so that no lawyer working on one
matter has access to any information about the other."  Id., ¶ 14.
Finally, counsel represents that KVN will not cross-examine Grewal
if he called as a witness in this matter.  Defendant's Opposition
to the Government's Motion for Disqualification ("Opp.") at 6 (July
28, 2011) (Dkt. No. 352 at 11).  Instead, according to counsel,
Malcom Segal, of Segal and Kirby, would cross-examine Grewal.
Accordingly, the second ethical wall, says KVN, will be between
Malcolm Segal[14] on the one hand, and KVN on the other.  KVN asserts
that Malcom Segal has had "***no access to any confidential
information belonging to Mr. Grewal***" (emphasis in text), and will
not consult with any lawyer at KVN regarding Grewal's testimony.

The government argues that KVN's ethical walls are
insufficient, making reference to confidential information that has
"presumably flowed between attorneys on both sides of the proposed
wall during the 14 months that Keker & Vasn Nest has represented

---

[12] This was confirmed by Keker in his representations to the
court during the hearing on this motion.

[13] The court presumes that Celio and Van Nest only lack access
to KVN's internal or confidential "documents, pleadings and and
information."

[14] The court would normally refer to Malcolm Segal as "Segal,"
but here includes his first name in order to ensure there is no
confusion with Matthew Segal, an Assistant U.S. Attorney in this
proceeding.

Grewal." Motion To Disqualify at 13 (July 14, 2011) (Dkt. No. 339-1).

The possibility of information flowing between Celio (and Van Nest) on the one hand and Keker on the other, however, is entirely speculative on the part of the government. KVN has stated under oath and in representations to this court that no such confidential information of Grewal has made its way to Keker. The government has provided no information to indicate otherwise, other than its speculation. As to the reality that such a possibility raises the "appearance" of a true conflict, the fact is that Salyer has knowingly and intelligently waived his right to conflict-free counsel. It cannot be that the mere possibility (or the actual occurrence) of confidential information flowing from a prior client to the current client's attorney is sufficient to grant a motion to disqualify. This possibility is the very reason a waiver is necessary. If it were sufficient to refuse the waiver, we would be left with the rule: whenever a waiver is necessary, it must be refused. That is not the rule.

In fact, it is not simply the possible flow of information that counsels refusal of the waiver, it is the potential *abuse* of that information. See U.S. v. Wheat, 813 F.2d at 1402. What the government's papers have done is show that the court could refuse the waiver because of a potential conflict. But the fact that the court can refuse the waiver – thus depriving the defendant of the counsel of his choice – does not mean that it should do so, and certainly it does not mean that the court must do so.

11

1  The cases cited by the parties are less helpful than they may
2  appear at first.  The cases simply carry out the Supreme Court's
3  instructions in Wheat to grant wide latitude to the district court
4  in refusing waivers of conflict-free counsel.  Accordingly, in
5  affirming the refusal of the proffered waivers, the cited cases do
6  not address why the district court was right to refuse the waiver.
7  They only address why it was not wrong to do so, namely, there was
8  a potential conflict.  But while it may be good (or at least not
9  reversible on appeal) to not be wrong, it is not sufficient for
10 this court to deprive a criminal defendant of the counsel of his
11 choice.

### 2.  Ability to diligently defend Salyer

13 Of greater concern is Keker's ability to defend his client,
14 given the restrictions of the ethical wall erected by KVN.  As the
15 government indicates, the problem with the ethical walls
16 constructed by KVN is that they appear to prevent Keker from
17 approaching witnesses – namely Grewald – who might want to testify
18 on his behalf.  Motion at 13 n.1.

19 Here, the question is not whether having conflicted counsel
20 could have any effect on counsel's ability to represent the
21 defendant.  The question is whether it is sufficient to prevent
22 counsel from diligently representing his client. Here, counsel for
23 defendant is satisfied that lacking access to this one potential
24 witness will not adversely affect the defense.  The defendant, to
25 repeat, has signed off on this view, by agreeing to waive his right
26 to conflict-free counsel.  Accordingly, while this issue might

12

weigh in favor of refusing the waiver, in the court's view, it is

not sufficient to outweigh the defendant's right to the counsel of

his choice.

## II. CONCLUSION

The court has carefully considered defendant's insistence

that he be permitted the assistance of the substantial

additional resources available to him through the additional

counsel of his choice, KVN, and his Sixth Amendment right to the

counsel of his choice.[15]  The court has also carefully considered

defendant's waivable right to conflict-free counsel, and the

fact that defendant has knowingly and intelligently waived this

right.  The court finds that KVN has, at most, a potential

conflict in this case, and that the court is therefore

<u>authorized</u> to refuse Salyer's waiver of conflict-free counsel.

However, the court finds insufficient basis to refuse or

override Salyer's choice of additional counsel.[16]  Accordingly,

the motion to disqualify KVN is DENIED.

IT IS SO ORDERED.

DATED: August 19, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[15] The cases often refer this right as "qualified."  In this
case, the only applicable qualification is that the defendant
cannot always have the attorney of his choice if the attorney is
conflicted.

[16] The court notes that the defendant in <u>Wheat</u> also sought
"*additional* counsel of his choice," but that the district court's
refusal of his waiver was affirmed by the Supreme Court. <u>See</u> <u>Wheat</u>
486 U.S. at 172 (Stevens, J., dissenting) (emphasis in text).