1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,
                                              No. CR-S-10-0061 LKK (GGH)
11              Plaintiff,

12        vs.
                                              ORDER
13   FREDERICK SCOTT SALYER,

14              Defendant.

15   _____/

16   *Introduction and Summary*

17              Although the initial indictment was filed nearly two years ago, followed with

18   minor modifications set forth in superseding indictments, defendant Salyer seeks a bill of

19   particulars in several respects.  Although technically within a time frame seeking a bill of

20   particulars after arraignment on the latest superseding indictment, defendant does not relate why

21   it took so long to understand that he did not sufficiently understand the allegations in the mostly

22   unchanged indictment (now the Second Superseding Indictment – hereafter "indictment") such

23   that he could prepare a defense to the charges.  It appears to the undersigned that the real purpose

24   of this motion for bill of particulars is not to seek clarification of the indictment, but an attempt

25   to corral the government's presentation of its case.  For the reasons set forth below, with one

26   exception, the motion for bill of particulars is denied.

                                              1

*The Indictment*

The indictment, previously characterized by the undersigned as "fairly specific" in previous discovery motions, alleges RICO and RICO conspiracy claims, honest services wire fraud, destruction, alteration of falsification of records pertinent to a federal investigation, conspiracy in restraint of trade (price fixing and/or bid rigging), and forfeiture counts. All of the allegations relate to Salyer's and others' operation of SK Foods, at one time, a very large company engaged in the food processing business. The allegations are contained within 61 pages and contain 31 paragraphs of background information. The undersigned will reserve specific references to the indictment for the sections below which discuss every request for more particularity.

*Legal Standards Regarding the Ordering of a Bill of Particulars*

In determining whether a bill of particulars is warranted under Federal Rules of Criminal Procedure, Rule 7(f), the Ninth Circuit has stated: "A bill of particulars has three purposes: to apprise the defendant of the specific charges being presented so as to minimize surprise at trial, to aid the defendant in preparing for trial, and to protect against double jeopardy." United States v. Burt, 765 F.2d 1364, 1367 (9th Cir. 1985); see also, United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983); United States v. Ayers, 924 F.2d 1468, 1483-84 (9th Cir. 1991). "The decision whether to grant a request for a bill of particulars is directed to the trial court's discretion." United States v. Long, supra, 706 F.2d at 1054, and cases cited therein.

A bill of particulars is not to be used as a discovery device, with a defendant interrogating the government as to the precise details of every alleged act – all the who, what, and where of every allegation. United States v. Giese, 597 F.2d 1170, 1181 (9th Cir. 1979). The precise rules of criminal discovery would be unnecessary if a bill of particulars were meant to serve the same purpose. "Acquisition of evidentiary detail is not the function of the bill of particulars." Hemphill v. United States, 392 F.2d 45, 49 (8th Cir. 1968).

\\\\

Furthermore, even if this court were to find the indictment lacking, subsequent measures by the government and defense counsel may negate the need for a bill of particulars.  In determining whether a bill of particulars is required, the court must examine the other material provided to defendant.  Giese, 597 F.2d at 1180.  Discovery materials are one essential component necessary to provide defendant with the information needed to prepare their case.  See United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984); United States v. Long, 706 F.2d at 1054: ("Full discovery will obviate the need for a bill of particulars."); United States v. Buckner, 610 F.2d 570, 574 (9th Cir. 1979).  However, in some cases, overwhelming discovery may necessitate a bill of particulars because the volume of material may be such that defendants will be unable to focus their investigation toward particular facts and circumstances in order to be prepared for trial.  See United States v. Bin Laden, 92 F. Supp.2d 225, 234-35 (S.D. N.Y. 2000).

The court also finds that where the motion for bill of particulars is made very late in the prosecution of the case, as it has been here, the moving defendant should demonstrate why motion practice (and there has been quite a bit in this case) has not fully apprised defendant of the government's theory of prosecution.

A case which this court finds particularly similar and useful in the context of this case is United States v. Hsuan Bin Chen, 2011 WL 332713 (N.D. Cal. 2011).  Chen involved a large pricing fixing conspiracy related to TFT-LCD displays used in computers and televisions.  Forty-two million pages of criminal discovery had been disseminated by the prosecution.  As Salyer does here for the most part, the Chen defendants sought a bill of particulars: (1) to obtain identities of co-conspirators and meeting participants, (2) specific locations where the conspiracy transpired, (3) information about meeting and statements made in the meetings; (4) all of the overt acts, (5) victim (customer) information, (6) specific information about price quotations, (7) accounting information showing gains and losses from the conspiracy.  Judge Illston noted the specific discovery which should have placed defendants on sufficient notice of the nature of the charges, such as witness interview statements, and a host of other specific discovery.

The Court concludes that defendants are not entitled to a bill of particulars. The indictment adequately advises defendants of the charges against them, and defendants seek extremely detailed evidence to which they are not entitled through a bill of particulars. As one court has noted, "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.1985) (internal citations omitted, emphasis in original).

Here, the indictment sets forth the dates of the conspiracy and the specific time periods each of the defendants are alleged to have participated in it, a description of the type of antitrust conspiracy charged and the specific types of TFT-LCD covered by the indictment, a description of the goals of the conspiracy, as well as a detailed description of the means and methods by which those goals were to be accomplished. The indictment is far more detailed than other indictments that prior Ninth Circuit cases have found to be sufficient. *See, e.g., United States v. Miller*, 771 F.2d 1219, 1226-27 (9th Cir.1985) (upholding an indictment that charged "a continuing conspiracy existed for a period of about five years, '[b]eginning at least as early as January 1978, and continuing until at least October 1982.' [and that listed] the actions which the co-conspirators took to form and carry out the conspiracy (i.e., discussions by telephone or at meetings at defendants' business premises, bars, restaurants, and gasoline stations which they owned, operated or at which they controlled the retail prices of gasoline), and charges that the defendants attempted to enforce adherence to their price-fixing scheme by informing other competitors of the conspirators' agreements, personally and by telephone.").

The Court agrees with the government that the indictment need not specify the overt acts committed in furtherance of the charged conspiracies, and that it is unreasonable to require the government to "state the circumstances under which, and the words or conduct by means of which" defendants and every alleged co-conspirator entered into the alleged conspiracies. *See United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir.1985) (defendants not entitled to bill of particulars in order to obtain names of unknown co-conspirators, exact date on which alleged conspiracy began, or statement of all overt acts), *amended on other grounds,* 777 F.2d 543 (1985); *see also Miller*, 771 F.2d at 1226 ("An indictment charging a violation of section one of the Sherman Act is not required to allege any overt act.... Because the Sherman Act punishes the mere act of conspiring, overt acts in furtherance of the conspiracy need not be alleged.").

The Court also finds that the discovery provided to defendants obviates the need for a bill of particulars. While the discovery is voluminous, the government has provided it in a fashion designed to help defendants prepare their defense. The government began production of discovery as soon as the defendants and the Court signed a protective order. The government conducted separate meetings with defense counsel explaining the charges against each defendant. Importantly, the discovery produced thus far has included approximately 87 highly detailed interview reports. In addition, the government has indexed both hard copy and electronic documents, and produced electronic discovery in a searchable format. *Chen*, 2011 WL 332713 at *7-8.

1    Salyer heavily relies on <u>United States v. Trumpower</u>, 546 F. Supp. 2d 849 (E.D.

2 Cal. 2008), but the undersigned finds that case distinguishable and ultimately not persuasive

3 here.  Trumpower was accused of money laundering, but the seemingly numerous and diverse

4 crimes underlying that generic charge were not identified.  In that case Judge Jensen correctly

5 found that without an underlying crime, there could be no money laundering, and defendant was

6 entitled to know the particulars surrounding this important element.  The government did

7 previously file a bill of particulars identifying the underlying crimes, but Judge Jensen found that

8 further specifics, including who committed the underlying crimes, the victims of such crimes, the

9 how and when the crime were accomplished, had to be set forth.  Unlike the situation here, the

10 charged offenses in <u>Trumpower</u> were derived from background crimes not charged.  Therefore,

11 in order to prepare for the charged offense more information had to be known about the

12 underlying criminal activity.  Moreover, there was no discussion that discovery had supplied

13 Trumpower with the necessary information he sought in the bill of particulars.  To the extent that

14 Salyer interprets <u>Trumpower</u> as requiring the indictment in every case to detail the evidentiary

15 specifics of every count, all of the who, what and where – such as identities of all criminal actors

16 involved, all victims involved, the precise activities of all players in the criminal activities, the

17 terms of rigged bids, the base price of natural gas and the like, such an interpretation runs counter

18 to the Ninth Circuit authority and other persuasive authority cited above.

19    The undersigned now turns to the requests in this case.

20 *Discussion*

21    Salyer first contends that the specific examples of mislabeling allegations, i.e.,

22 falsifying quality information, contained in Count 1, paras 78, 79, are fine as stated, but if the

23 government intends to rely on any other examples at trial , it must specify them.  The defense

24 also contends that victims of the mislabeling must be identified as well as specific regulations

25 violated.

26 \\\\

5

**1. Mislabeling Allegations**
**a. Unless the government will restrict its mislabeling allegations to those contained in Count 1 ¶¶ 78-79, specify all mislabeling allegations upon which the government relies in Counts 1-2 including, but not limited to, identifying the documents allegedly falsified in Count 1, ¶¶ 31(e) and 75 as well as identification of the allegedly false statements contained in those documents.**

**b. Unless the government will limit the victims it introduced at trial to those identified in Count 1, Racketeering Acts 5-20, specify all victims (including any referenced in Count 1, ¶ 77) of Defendant's alleged mislabeling that the government plans to introduce at trial.**

**c. Specify whether the government will attempt to prove at trial that Defendant violated any food safety or food quality statues [sic] and/or regulations, whether the government intends to ask the Court to instruct the jury on those statutes or regulations, and whether the government intends to argue, within the meaning of those statues [sic] or regulations, that SK Foods sold "adulterated" food.**

It is well established that the government can prove a conspiracy with evidence of overt acts not referenced in an indictment. United States v. Fuchs, 218 F.3d 957, 973 (9th Cir. 2000) (Graber, J. in dissent) citing Brulay v. United States, 383 F.2d 345, 350-51 (9th Cir. 1967). See also United States v. Schurr, 794 F.2d 903, 907 (fn.4) (3rd Cir. 1984); United States v. Harris, 542 F.2d 1283, 1300 (7th Cir. 1976). It follows, that the mere introduction of extra-indictment evidence to demonstrate the methodology of a scheme is even more permissible. The government has turned over binders to the defense containing all the mislabeling events which the government intends to use in proving the scheme at issue. The evident purpose of disclosing the numerous events is to show the constancy of the illegal means and methods of the scheme, i.e., this is not a case with a few innocent mistakes of mislabeling. As argued at hearing, the government plans to utilize at trial a summary exhibit based on the underlying events which include not only the events set forth in the indictment, but also the entirety of the events disclosed. A reprinting of *all* the already disclosed binder events in the indictment is ponderous and unnecessary. Moreover, the defense is free to pick and choose those events which it desires to challenge, if it believes the summary exhibit to be without proper foundation. There is no

\\\\

surprise possible.[1]  To the extent that Salyer indirectly seeks to exclude the preparation of a summary exhibit by having the court limit any reference to a mislabeling event to only those set forth in the indictment, this transparent tactic must fail.

Similarly, listing all the victims of the mislabeling events is unnecessary.  <u>Chen</u>, <u>supra</u>.

Salyer's argument with respect to a listing of the specific regulations which the government might contend have been violated has more merit.  If the government plans to argue the violation of a regulation, the defense is entitled to construct a counter-argument, if necessary and possible.  This construction needs to be performed prior to trial, not when Salyer learns of the specific regulation for the first time at trial.  If the government does not plan to argue the violation of specific regulations, no construction will be necessary.  In either case, a specification must now be made.  However, the government need not detail ahead of time the factual or legal specifics of its argument, nor, of course, must it presently tender jury instructions utilizing the regulations.  The government shall specify to Salyer the identity of the any regulations which it plans to argue has been violated, or state that it does not plan to present regulatory violations, within twenty-one days of the filed date of this order, but the government need do nothing  more.

\\\\

\\\\

\\\\

\\\\

\\\\

---

[1]  Salyer argued that there were so many mislabeling events in the binders that the government should be limited to proving only those set forth in an indictment.  That there may be very many violations of law does not give a defendant the right to have the violations "dismissed" down to a manageable size for the defense.  Moreover, Salyer's argument would preclude the preparation of a summary exhibit in every case – whose purpose is to present information to the jury in an intelligible fashion which could not otherwise be presented on account of the voluminous nature of the underlying documentation.

**2. Bribery Allegations**

**a. Specify whether the government will argue or offer evidence to establish that Salyer or SK Foods actually made bribe payments or that the money utilized in making any bribe payments came directly from Salyer or SK Foods.**

The indictment is actually quite specific concerning how the alleged bribery scheme worked. For example, with respect to Kraft Foods, the indictment provides:

46. Beginning no later than in or about January 2004, Rahal began making personal bribe payments to Watson on behalf of SK Foods. Such bribe payments were made with the knowledge and, in many instances, at the direction of SALYER.....

47. Defendant Salyer's direction to Rahal in this regard was, in part, conducted by way of interstate telephone communications. By way of example, on or about April 14, 2008, defendant SALYER and Rahal engaged in a recorded interstate telephone conversation during which the two discussed how Rahal had recently made personal bribe payments to Watson totaling $24,000. Later in that same conversation, defendant SALYER expressed his concern to Rahal that SK Foods was not getting the maximum value for its bribes to Watson.

Racketeering Act Two, paras. 46 and 47 at 19.

The indictment goes on to allege other instances where Salyer caused Rahal to pay bribes to various companies' personnel. See e.g. Indictment at 20-21, 21- 22, 22-24. It is completely understood by all concerned that the government contends Rahal received some type of remuneration from Salyer/SK, in part, for his bribing activities. Nevertheless, much as a contention interrogatory or request for admission in a civil action would do, Salyer requests a specification from the government whether Salyer ever "directly" paid a bribe as opposed to having Rahal do the bribe sending. This type of specification is not necessary in an indictment – the indictment is already very specific – Salyer caused Rahal to send a bribe. Moreover, a specification in the indictment is not necessary to apprise Salyer whether or not he personally or "directly" ever paid a bribe, or whether the discovery demonstrates such – he would know that. In addition, Salyer is privy to the Rahal government interviews setting forth the way in which Rahal paid bribes. But more importantly, the precise evidentiary events to be demonstrated by

8

the government, such as the precise method in which bribes made their way to SK Foods' customers, need not be pled in the indictment. The undersigned is not finding that "anything goes at trial" insofar as the government departs from the specific wording of the indictment, or produces "surprise" evidence that was not disclosed in discovery, assuming that happens. If such does occur, that is a matter for the trial judge to determine in its specific context. The point here is that a bill of particulars in a criminal action is not permitted to be used in the way a contention interrogatory or request for admission would be used in a civil case, designed to pin down a party to specific facts or theories.

### 3. Antitrust Allegations

**a. With respect to Count 8, specify who the co-conspirators were, what role, if any, Defendant played in the conspiracy, what role other SK Foods employees played, and how, if at all, the agreement was executed.**

**b. With respect to Count 9, specify who the co-conspirators were, what role, if any, Defendant played in the conspiracy, what role other SK Foods employees played, when the agreement was negotiated, and how, if at all, the agreement was executed.**

**c. With respect to Count 10, specify how Kraft and SK Foods rigged bids, which bids were rigged, what the terms of any rigged bids were; what role, if any, Defendant played in the conspiracy, what role other SK Foods employees played, when the agreements were negotiated, and how, if at all, the agreements were executed.**

**d. With respect to Count 11, specify what surcharge the conspirators agreed to, what the base price of natural gas the conspirators based their surcharge on, who the co-conspirators were, what role, if any, Defendant played in the conspiracy, what role other SK Foods employees played, when the agreements were negotiated, and how, if at all, the agreements were executed.**

**e. With respect to Count 12, specify who the co-conspirators were, what role, if any, Defendant played in the conspiracy, what role other SK Foods employees played, when the agreements were negotiated, and how, if at all, the agreements were executed.**

The requests here essentially mirror the requests in Chen. As was the case in Chen, the government in this case has produced the witness interviews that stand as support for the price fixing allegations. See attachments in Docket # 420. Moreover, at this time, the court has no reason to believe at present that any "computer information searchability" problems exist

to any significant degree.[2]  Therefore, like Judge Illston, the undersigned does not find that the volume of discovery has unduly affected the ability to prepare a defense.

The various counts in the indictment set forth the time period of the price fixing conspiracy, the customer company doing business with SK Foods participating in the conspiracy (except for Counts Eleven and Twelve which specify the precise product pertinent to the price fixing) and the time period of the alleged conspiracy.  Not surprisingly, the government alleges that the conspiracy was effectuated during conversations and meetings.  Given the precise discovery pertinent to these claims which has been disclosed to Salyer, a defense can be prepared.  No more is required.  Chen, supra.

At hearing, counsel for Salyer argued that a very necessary specification concerned whether the alleged activities constituted price fixing or bid rigging.  Given that Count 10 specifically alleges bid rigging and the other antitrust counts do not, the indictment answers counsel's questions.

*Conclusion*

With the exception of further identification of regulation violations, as discussed above, Salyer's motion for a bill of particulars is denied.  The identification of regulations violated by mislabeling quality control documents shall be made within twenty-one (21) days of the filed date of this order.

Dated: December 2, 2011

    /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:ggh

---

[2]The undersigned is informed that Salyer has made no CJA request for computer expert assistance as he was invited to do.