UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

FREDERICK SCOTT SALYER,

        Defendant.

                                    NO. CR. S-10-061 LKK

                                    <u>O R D E R</u>

    The government's Second Superseding Indictment charges defendant Salyer with violations of: 18 U.S.C. §§ 1962(c) and (d) (Racketeering Influenced and Corrupt Organizations Act ("RICO")), 1343 & 1346 (Honest Services Wire Fraud), 1519 (alteration of a document in a federal investigation), and 15 U.S.C. § 1 (Sherman Act price-fixing).

    Salyer has moved to sever the antitrust counts from the remainder of the indictment. For the reasons that follow, Salyer's motion will be granted.

////

1

**I.  STANDARDS FOR SEVERANCE.**

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – [i] are of the same or similar character, or [ii] are based on the same act or transaction, or [iii] are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). The joinder of charges "is the rule rather than the exception." U.S. v. Armstrong, 621 F.2d 951 (9th Cir. 1980) "At least one of Rule 8(a)'s three conditions must be satisfied for proper joinder.[1] U.S. v. Jawara, 474 F.3d 565, 573 (9th Cir. 2007).

The joinder determination is made solely with reference to the allegations in the indictment. Jawara, 474 F.3d at 572-73 ("a valid basis for joinder should be discernible from the face of the indictment").[2] Because Fed. R. Crim. P. 14 "is available 'as a

---

[1] The Ninth Circuit has criticized joinder based solely upon the "same or similar character" justification, because the efficiency and economy benefit "largely disappear" with this as the sole justification. U.S. v. Jawara, 474 F.3d 565, 575 (9th Cir. 2007). However, it is still the law in this circuit. Jawara, 474 F.3d at 575-76 (citing the "handful" of Ninth Circuit cases that "have upheld initial joinder on the basis of 'similar character'").

[2] See also, U.S. v. Fiorillo, 186 F.3d 1136, 1145 (9th Cir. 1999) ("In making an assessment of whether joinder was proper, this court examines only the allegations in the indictment"), cert. denied, 528 U.S 1142 (2000); U.S. v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in assessing a claim of misjoinder, "we examine

remedy for prejudice that may develop during the trial,' Rule 8 has been 'broadly construed in favor of initial joinder ....'" Jawara, 474 F.3d at 573, quoting U.S. v. Friedman, 445 F.2d 1076, 1082 (9th Cir.), cert. denied, 404 U.S. 958 1971).

The Ninth Circuit in Jawara requires this court to take seriously its teaching that Rule 8(a) is to be determined solely by reference to the language of the indictment itself. Jawara, 474 F.3d at 573. Nevertheless, the government has submitted over seventy pages of witness interviews in support of its opposition to the motion to sever. In explanation, the government asks the court to focus on language in Jawara in which the Court states that the Ninth Circuit has, on occasion, "noted matters outside of the indictment," and that it has applied the "indictment-only" rule "in name, if not always in practice." Jawara, 474 F.3d at 572-73 & 573 nn. 2 & 3.

Notwithstanding any inward-looking musings appearing in Ninth Circuit opinions, this court is bound by the established law of the Ninth Circuit.[3] "[T]he established rule in this circuit is that

---

only the allegations in the indictment"); U.S. v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) ("the validity of the joinder is determined solely by the allegations in the indictment").

[3] See, e.g., U.S. v. AMC Entertainment, Inc., 549 F.3d 760, 771 (9th Cir. 2008) ("when the Ninth Circuit or any of its coequal circuit courts issue an opinion, the pronouncements become the law of that geographical area"); Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit"). This court simply will not disregard binding authority; rather it is the task of this court to be faithful to all the authority that binds it, to the best of its ability.

3

a valid basis for joinder should be discernible from the face of the indictment ...." Jawara, 474 F.3d at 573. Unless subsequent authority abrogates that rule, this court is bound by it.

In any event, the "indictment-only" rule does not appear to be inconsistent with a rule permitting consideration of certain matters that are not fully and literally contained within the four corners of the indictment, but which are drawn directly from the indictment's allegations. In U.S. v. Goldberg, 549 F.2d 1334 (9th Cir. 1977) (per curiam), for example, the indictment charged defendant with infringing a copyright regarding five movies and also with stealing the same movies. The Ninth Circuit held that joinder of those charges was proper because "the government indicated that it would show at trial that appellee stole the films for the purpose of selling them the next day, and thus that the offenses were part of a common plan." Goldberg, 549 F.3d at 1335.

**II. THE INDICTMENT.**

Counts 1 and 2 of the Second Superseding indictment charge defendant Salyer with conducting the affairs of SK Foods through a pattern of "racketeering activity," and conspiracy to do so, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d). According to the indictment, SK Foods is a grower and processor of tomato paste and other food products. The indictment alleges twenty (20) overt acts in furtherance of the RICO violations, identifying with particularity who conducted which overt act, when, and to what purpose.

4

Specifically, the RICO Counts charge that Salyer, the indirect owner and Chief Executive Officer of SK Foods, in conspiracy with his confederates, bribed specific, named purchasing agents of Frito Lay, Kraft Foods, B&G Foods and Safeway Foods – all of which companies were customers of SK Foods. Salyer bribed these employees – Wahl (Frito Lay), Watson (Kraft Foods), Turner (B&G Foods) and Chavez (Safeway): (i) to get their respective companies to accept the bids of SK Foods over competitors' bids, causing the customers to pay inflated prices to SK Foods; and (ii) to turn over their respective companies' proprietary information to SK Foods. In addition, the RICO count charges that Salyer, together with his confederates, mislabeled SK Foods products that it sold to its customers, resulting in adulterated and falsely labeled tomato paste and other food products entering the stream of commerce.

Counts 3-6 charge Salyer with violations of the "honest services" wire fraud statutes, 18 U.S.C. §§ 1343 & 1346.[4] Specifically, those counts charge Salyer with depriving three of the customers (Frito Lay, Kraft Foods and B&G Foods), of the honest services of their respective purchasing agent employees (Wahl, Watson and Turner), by means of the bribes described above in the RICO counts.[5]

---

[4] A "scheme or artifice to defraud" under the wire fraud statute, 18 U.S.C. § 1343 "includes a scheme or artifice to deprive another of the intangible right of honest services," which includes the use of bribes and kickbacks. 18 U.S.C. § 1346; Skilling v. U.S., 561 U.S. ___, 130 S. Ct. 2896, 2931-34 (2010).

[5] There are only three companies described in these four counts because Counts 4 & 5 both relate to Kraft Foods.

5

Count 7 charges Salyer with altering a document involved in a federal investigation, in violation of 18 U.S.C. § 1519. According to the indictment, Salyer, in the midst of an FBI investigation, altered the minutes of an SK Foods Board meeting to hide Rahal's position at SK Foods. Salyer had learned that Rahal had pled guilty to RICO and price-fixing charges.

Counts 8-9 and 11-12 charge Salyer with conspiring with others to fix prices and eliminate SK Foods' competition, in violation of 15 U.S.C. § 1. The victims in these counts are McCain Foods and ConAgra, along with un-named others. There is no mention in these price-fixing counts of bribery (nor any other method of depriving McCain Foods or ConAgra of the honest services of their employees, nor of any mislabeling). There is no mention of any names, times or places, other than the general averment that the crimes took place in the Eastern District of California. Rather, the indictment charges that Salyer and his co-conspirators violated the law by meeting, communicating, agreeing and entering into contracts to fix prices and restrain trade.

Count 10 charges Salyer with price-fixing in violation of 15 U.S.C. § 1. Distinguishing this count from the other price-fixing counts however, Count 10 alleges that Salyer bribed an un-named purchasing agent of the victim, Kraft Foods, "to obtain confidential bid information in order to monitor compliance with the agreements reached."

////

////

**III. THE SEVERANCE FACTORS**

    **A.   "Same or Similar Character."**

In determining whether the counts in the indictment are of the "same or similar character," the Ninth Circuit instructs the court:

> to consider factors such as [i] the elements of the statutory offenses, [ii] the temporal proximity of the acts, [iii] the likelihood and extent of evidentiary overlap, [iv] the physical location of the acts, [v] the modus operandi of the crimes, and [vi] the identity of the victims in assessing whether an indictment meets the 'same or similar character' prong of Rule 8(a).

Jawara, 474 F.3d at 578.

Upon careful review of the indictment, the court finds that the antitrust charges are not of the same or similar character as the remaining counts. Looking at the larger picture here, rather than each of these illustrative elements in isolation, the court notes that the "customary justification" for joinder is to promote judicial efficiency and the conservation of judicial resources. See Jawara, 474 F.3d at 575, quoting Halper, 590 F.2d at 429. This goal would be furthered by not trying the same legal and factual issues multiple times in different trials. Keeping this overall picture in mind, the above factors that are most pertinent to this determination in this case are: (i) the elements of the offenses; (ii) potential evidentiary overlap; and (iii) modus operandi.

7

The elements of the offenses here are not the same or even similar, with the possible exception of a common element of interstate commerce.[6] The only evidentiary overlap even asserted by the government involves (i) the single alleged bribe to the Kraft Foods employee;[7] (ii) connection to interstate commerce, and (iii) alteration of the SK Foods Board minutes (which the government asserts was done to obstruct both investigations). But even assuming these evidentiary overlaps, they pale in comparison to the evidentiary issues for which no overlap is shown.[8]

Finally, the modus operandi of the various offenses suffer from the same lack of overlap as does the potential evidence. The only common modus operandi derivable from the indictment is the one

---

[6] See, e.g., Kaplan v. Burroughs Corp., 611 F.2d 286, 290 (9th Cir. 1979), cert. denied, 447 U.S. 924 (1980); Salinas v. U.S., 522 U.S. 52, 62 (1997) (elements of a RICO violation); U.S. v. Moyer, 726 F. Supp.2d 498, 508 (M.D. Pa. 2010) (elements of a claim of falsification of a document in a federal investigation); U.S. v. McNeil, 320 F.3d 1034, 1040 (9th Cir.) (elements of wire fraud), cert. denied, 540 U.S. 842 (2003).

[7] The RICO, Honest Services and and antitrust charges all allege that Salyer bribed a Kraft Foods purchasing agent – Watson in the RICO and Honest Services charges, and un-named in the antitrust charge – to obtain Kraft's "confidential" or "proprietary" bid information. Even on that point, the parties at oral argument were in sharp disagreement over whether the bribe of the Kraft Food employee in the RICO and Honest Services counts is the same bribe as was involved in the price-fixing count. The government, citing materials outside of the indictment, claims that it is referring to the same bribe in all three counts. The defendant, citing materials outside of the indictment, claims that these were different bribes.

[8] The government also asserts that some witnesses will testify about the antitrust counts and the other counts. This is a pertinent consideration, but it does not outweigh the lack of commonality between counts that is apparent from the indictment.

8

bribe of the Kraft purchasing agent. The other modus operandi allegations of the antitrust counts have nothing in common with those of the remaining counts. The government argues that the antitrust counts share "bribing purchasing agents" as a modus operandi in common with the RICO counts. But nothing in antitrust Counts 8, 9, 11 or 12 states, or gives rise to an inference, that there was any bribery involved.[9] The sole bribery of a purchasing agent alleged in the antitrust counts is the one contained in Count 10.

The remaining factors – time frame, location and identities of victims – are too general in this case to overcome the lack of similarity in elements, evidentiary overlap and modus operandi. The conduct all occurs within the same broad time frame (January 1998 to December 31, 2008), and they all occur in the Eastern District of California, among other locations. Two of the victims overlap – ConAgra and Kraft Foods. However, the remaining thirteen alleged victims of the RICO fraud are not victims in the antitrust conspiracy. And, the third antitrust victim (McCain), is not a victim in the RICO fraud.[10]

---

[9] "[T]he similar character of the joined offenses should be ascertainable-either readily apparent or reasonably inferred-from the face of the indictment." Jawara, 474 F.3d at 578.

[10] The government asserts in its Opposition brief that General Mills, a RICO victim, is also a victim of price-fixing in Counts 11 and 12 of the complaint, and that similarly, Frito Lay is a victim of price-fixing in Count 11 and that Nestle and Barilla are victims of price-fixing in Count 12. Opposition at 7. There is nothing in the Indictment to indicate that these companies, all alleged RICO victims, are the victims of a price-fixing conspiracy. That information appears only in the Declaration of Richard B.

The government argues that the counts are of the same or similar character because they were all "designed to accomplish a common goal: to enrich the defendant and his coconspirators by artificially inflating the price of SK Foods' products." Opposition at 8. The government cites no authority for the proposition that a "common goal" makes counts the same or similar in character, nor is the court aware of any.[11]

**B. "Same act or transaction."**

The second circumstance that would justify joinder is if the offenses charged are part of the same act or transaction. Fed. R. Crim. P. 8(a). The government argues broadly that Salyer's crimes were part of the same transaction because they were all done with the single goal of increasing his profits. He did so, the government argues, by engaging in RICO violations and committing price-fixing, and by covering up those crimes through the alteration of evidence.

The term "transaction" here "is to be interpreted flexibly and 'may comprehend a series of related occurrences.'" U.S. v. Terry, 911 F.2d 272, 276 (9th Cir. 1990);[12] Friedman, 445 F.2d at 1083

---

Cohen (Dkt. No. 420) ¶ 3, submitted in support of the Government's Opposition brief. As noted above, this information will be disregarded under Jawara, since it is not contained in the indictment nor reasonably inferable from the indictment.

[11] In any event, the "common goal" argument is addressed below in the "same act or transaction" and "common scheme or plan" sections.

[12] Quoting U.S. v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988), cert. denied, 493 U.S. 829 (1989).

("'Transaction' is a word of flexible meaning"). However, it is not infinitely inflexible. See Jawara, 474 F.3d at 573 (terms used in joinder consideration are "are not infinitely elastic").

Rather, it is the "logical relationship" between the acts alleged, coupled with "a large area of overlapping proof," that allows them to be seen as "the same act or transaction." U.S. v. Anderson, 642 F.2d 281, 284 (9th Cir. 1981); Friedman, 445 F.2d at 1083 (transaction "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship").

The indictment here does not allege that the acts and transactions constituting the antitrust counts are the same acts and transactions that constitute the RICO or other counts. The specific acts involved in the RICO counts involve Salyer's interactions with his <u>customers</u> and their employees. Salyer is alleged to have controlled the customers by bribing their purchasing agents, and got the customers to buy adulterated food products by mislabeling them. The specific acts involved in the price-fixing counts, on the other hand, involve Salyer's interaction with un-named co-conspirators. Other than the single bribe in one of the price-fixing counts, there is simply no allegation in the remainder of the price-fixing counts that the violations had anything whatever to do with Salyer's interactions with his <u>customers</u> or their employees. The indictment thus does not merely fail to suggest that the same activities form the basis for both groups of counts. Rather, the indictment strongly

suggests that the activities supporting the price-fixing counts are entirely different from those supporting the RICO counts.

The acts and transactions in this case are not the same, and the indictment does not even suggest that they are. Were it not for the government's briefs and submissions in opposition to the severance motion, there would be no basis at all for thinking that the antitrust counts were related to the other charges. The fact that all the counts had the same goals – increasing Salyer's profits at the expense of his customers – is not enough to call the antitrust count the "same act or transaction" as the RICO or other counts.

In Friedman, the defendant argued that the perjury and witness tampering counts were misjoined with the counts relating to his theft of a secret grand jury transcript.[13] The Ninth Circuit affirmed the district court's determination that joinder was proper as a single "transaction" because the indictment alleged "a closely related series of acts all done in pursuit of a single goal." Friedman, 445 F.2d at 1083. Specifically, the defendant stole the secret grand jury transcript and used it to improperly influence witnesses, and to construct his own false testimony.

Thus, the existence of a single goal is pertinent, but not sufficient, to justify joinder. Other cases approving joinder

---

[13] The counts were: conspiracy; contempt "for violating F.R. Crim. P. 6(d) by possessing and disclosing unreleased grand jury transcripts;" receiving and concealing the stolen transcripts; and obstruction of justice "by use of unreleased grand jury transcripts." Friedman, 445 F.2d at 1078.

12

involve similarly related series of acts, all done to achieve a single goal. As in Friedman, however, it is not merely the presence of a unifying goal that creates the same "act or transaction." What matters is the logical relation of the acts used to achieve that goal. It is not required that the acts are the same or similar in character, only that they be logically related in some way.

In U.S. v. Lopez, 477 F.3d 1110 (9th Cir.), cert. denied, 522 U.S. 855 (2007), for example, the weapon possession charge was logically related to the drug charges, because the weapon from the possession count was used in the drug possession and distribution count. Accordingly, the offenses "arose from the same act or transaction." Lopez, 477 F.3d 1117. In Friedman, the stolen grand jury transcript gave the defendant the information he needed to tamper with the witnesses and craft his own false testimony.

Here, there is no allegation that the underlying conduct was inter-related, with the possible, disputed, exception of the bribe paid to the Kraft Foods agent. Even in regard to that bribe, the most the government argues is that there was a single, isolated act of bribery that was common to one of the price-fixing counts on the one hand, and one of the RICO and Honest Services counts on the other. That does not create a set of inter-related facts that would give rise to the same act or transaction.

Jawara itself, the principal case relied upon by both sides, provides an illustration of how a single goal is insufficient for joinder where the constituent acts are not related. In Jawara, the

13

defendant was charged with two counts of fraud.  The first count was for document fraud under 18 U.S.C. § 1546(a), which prohibits the use of fraudulent documents to establish lawful entry or presence in the U.S.  The second count was for fraud against the U.S., under 18 U.S.C. § 371, and marriage fraud, under 8 U.S.C. § 1325.  The marriage fraud section prohibits the use of a fraudulent marriage to evade any provision of the immigration laws.  In other words, defendant engaged in two separate frauds with one single goal – to establish a lawful presence in this country.  The Ninth Circuit declined joinder, finding that the two different frauds were not the same act or transaction.

**C.   Connection, or common scheme or plan.**

The final circumstance that would justify joinder is whether the offenses charged "are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  In considering this factor:

> we ask whether "[c]ommission of one of the offenses [ ] either depended upon [ ] or necessarily led to the commission of the other; proof of the one act [ ] either constituted [ ] or depended upon proof of the other."

Jawara, 474 F.3d at 574, quoting U.S. v. Halper, 590 F.2d 422, 429 (2d Cir. 1978).

An example of a "common scheme or plan" is provided by U.S. v. Whitworth, 856 F.2d 1268, 1277 (9th Cir. 1988), cert. denied,

14

489 U.S. 1084 (1989). In that case, the government joined espionage counts with tax-evasion counts. The Ninth Circuit held that they constituted a common plan because "the money [defendant] allegedly received in exchange for classified information]" in the espionage count "was the same [money] as that involved in the" tax-evasion count.

A counter-example showing a lack of common scheme or plan is Jawara. Neither immigration fraud in that case led to the other, and proof of one fraud would not constitute proof of the other.[14] Rather, the frauds were alternate, separate ways of achieving defendant's single goal – lawful presence in this country. The Jawara situation is what is present here. Salyer is alleged to have wanted to unfairly profit at his customers' expense by making them pay inflated prices for his tomato products – his goal. But the indictment alleges that he accomplished this one goal, in two separate schemes. The first was by bribing his customers' purchasing agents into accepting his over-priced bids (on behalf of their defrauded employers), and into buying his adulterated food. The second was by conspiring with un-named co-conspirators to fix prices.

**IV. CONCLUSION**

Applying the cases, this court must make a "big picture" determination of whether joinder will promote judicial efficiency

---

[14] This was so notwithstanding that there must have been some facts that would have to be proved in both cases, such as the defendant's actual immigration status.

15

and economy by avoiding multiple trials of essentially the same crime or group of crimes. There is no showing in this case that multiple trials of the same facts will occur if the antitrust counts are severed. At most, based on the showing made here, one single bribe will have to be established in both cases, along with one single instance of document alteration, and the common establishment of the jurisdictional "commerce" element.[15]

This is insufficient to justify joinder of the antitrust claims in this indictment. The fact that disparate crimes may have isolated facts in common does not mean that those crimes are part of the same transaction, common plan nor that they are similar in character.

Accordingly, defendant's motion to sever the antitrust counts is **GRANTED**. The court now sets a hearing for December 20, 2011 at 9:15 a.m. for scheduling of the second trial.

IT IS SO ORDERED.

DATED: December 12, 2011.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[15] Of course, this court cannot predict, based upon the limitations on the Rule 8(a) inquiry imposed by the Ninth Circuit, whether other facts will turn out to overlap in a significant way once this matter actually goes to trial. The court only finds that based upon the showing made on this motion, the potential overlap is insufficient to justify joinder.

16