UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

         NO. CR. S-10-061 LKK

    Plaintiff,

v.                          O R D E R

FREDERICK SCOTT SALYER,

    Defendant.
_____/

**I.  SEARCH WARRANTS FOR DOCUMENTS**

On April 14, 2008 the government applied for a search warrant authorizing it to search the personal residence of defendant Frederick Scott Salyer, the corporate offices of SK Foods, and listed facilities of SK Foods. Defendant seeks the suppression of the search warrant evidence on the grounds that there was no probable cause to support the warrants,[1] and that the scope of the

---

[1] Salyer has standing to seek the suppression of searches of his home and his personal office. Both sides agree that the probable cause allegations of all the affidavits are identical.

1

warrants exceeded whatever probable cause existed.

For the reasons set forth below, defendant's motion to suppress the search warrant evidence will be denied.

**A.  Probable Cause.**

Defendant argues that the warrants' probable cause is based upon: (i) "the illegally obtained internal documents from SK Foods;" (ii) "the illegally seized telephone conversations from the Title III Wire Interceptions;" and (iii) the statements of the unreliable informant [Anthony Manuel]."  Dkt. No. 152 at 8.

This court has already determined that defendant had no standing to challenge the informant's warrantless searches of SK Foods facilities, and that there was no showing that the informant conducted a warrantless search of defendant's home or private office.  Accordingly, defendant's challenge to the use of the materials seized by the informant must fail.  The same is true for defendant's assertion that information and material gathered as the result of Title III wiretaps must be excluded from the probable cause consideration.

Finally, defendant's argument that the search warrants depended on the uncorroborated credibility of the informant, must also fail.  In fact, the informant's information was substantially corroborated, and the affidavits themselves fully disclosed the seriously tainted history of the informant, thus apprising the authorizing judge of the informant's credibility problem. Reading beyond the introductory paragraphs, it is clear that the government substantially corroborated the informant's statements with

recordings the informant made, government wiretaps, bank records and credit card statements. The affidavit was presented to the authorizing judge, who presumably decided that any material uncorroborated statements were also credible, given the informant's extensive corroboration on other statements, and given all that the informant stood to lose by failing to be truthful. There is simply no basis for this court to reach a contrary conclusion.[2]

**B. Scope of the Search Warrants**

Defendant asserts that the scope of the search warrants is broader than is justified by the underlying asserted probable cause. He correctly points out that "[t]he scope of the warrant, and the search, is limited by the extent of the probable cause." In re Grand Jury Subpoenas Dated Dec. 10, 1098, 926 F.2d 847, 857 (9th Cir. 1991); U.S. v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009) (same). Defendant is also correct to point that the warrant should not authorize "blanket removal of computers and storage media." Defendant fails to show however, that the search warrants issued in <u>this</u> case do not comport with the Fourth Amendment.

First, defendant challenges the inclusion of Category II(C)(1),[3] handwritten lab registers and other documents

---

[2] In any event, defendant does not challenge the government's assertion that the information not dependent on the informant's credibility, including the documents, wiretaps and other materials he unsuccessfully moved to suppress, is sufficient to create probable cause for the search warrants.

[3] See Dkt. No. 345-3 (search warrant and affidavit).

3

purportedly relating to fraudulent product labeling, because it includes documents going back to 1990, "long before the relevant time period." But defendant provides no authority for this view that only documents dated within the "relevant time period" are subject to search. The cases relied upon by defendant do not stand for this proposition.[4] The cited Ninth Circuit cases involved warrants that permitted searches that were not likely to find evidence of a crime at all.[5] Defendant has identified no case, and the court is aware of none, where the "scope" referred to the mere date of the evidence gathered. The government made a probable cause showing that the evidence of the mis-labeling crimes was to be found in the lab registers and similar documents. Therefore, the government was entitled to search the lab registers.[6]

---

[4] In Steagald v. U.S., 451 U.S. 204 (1981), the Supreme Court held that the police could not "search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant."

[5] In In re Grand Jury Supoenas Dated Dec. 10, 1987, 926 F.2d 847 (9th Cir. 1991), the court agreed that the warrants were overbroad in that they authorized the seizure of the files of clients who were not involved in the illegal activity. In U.S. v. SDI Future Health, Inc., 568 F.3d 684 (9th Cir. 2009), the court found that search warrants were overbroad that authorized the seizure of, for example, all rolodexes, address boods and calendars, regardless of whether the persons using them were suspected of criminal activity. In U.S. v. Tamura, 694 F.2d 591 (9th Cir. 1982), the court found it "highly doubtful" that the government acted lawfully when it "took large quantities of documents that were not described in the search warrant."

[6] The indictment indicates that this mis-labeling was the ordinary method of doing business for SK Foods, that in fact there was some label somewhere that needed to be falsified "every day." Moreover, it is not a surprising fact that evidence dated outside a given time frame might still throw light upon events happening within the time frame.

4

Second, defendant challenges category II(D), for documents relating to the "bill and hold" fraud," asserting that this category is a "subterfuge" to obtain voluminous records. Defendant does not explain why this is a subterfuge, as the government has never hidden the fact that it obtained, and intended to obtain, voluminous records.[7]

Third, defendant objects to the seizure of documents from Salyer American Fresh Foods, Carmel Wine Merchants, SS Farms and Blackstone Ranch. Defendant has no standing to challenge a search and seizure of these companies.

Fourth, defendant objects to the authorization to seize computers and other electronic devices. He correctly points out that the cases disapprove of "blanket" seizures of computers. However, the search warrant in this case clearly satisfies the suggested procedure set forth in U.S. v. Tamura, 694 F.2d 591 (9th Cir. 1982), by specifically requesting authorization to seize computer hardware, and by requesting authorization for a search procedure to avoid the removal of unnecessary hardware. See Dkt. No. 345-3 at 12-16. Defendant makes no attempt to address the actual warrant issued in this case, instead attacking a "blanket seizure" of computer and electronic devices without showing that that is what occurred in this case.

////

---

[7] To the degree defendant is concerned that the government really wanted to obtain records from Cedenco, he has no standing to challenge this alleged "subterfuge."

5

**II. SEARCH WARRANT DIRECTED TO GOOGLE.**

On January 15, 2010, the government sought a search warrant directed to Google,[8] for defendant's Google e-mail account. The government asserted that it was searching for evidence that the account was used in conjunction with a flight from prosecution. Defendant seeks to suppress the fruits of this search. For the reasons set forth below, defendant's motion will be denied.

Defendant argues that the search warrant affidavit was based principally on the statements of an informer, J.J., whose lack of credibility was not disclosed to the authorizing judge.[9] The informant told the investigator that defendant's residence "is vacant and has been largely emptied" of his personal belongings. In fact, argues defendant, the residence was still furnished, had his belonging there, and anyway, the residence did not belong to him, all of which purportedly undermined the informant's credibility.

First, defendant does not state what is the significance of

---

[8] The government asserts that defendant has no standing to challenge the government's search of his e-mail account, maintained on the servers of Google. Defendant makes a plausible case that he has standing. See U.S. v. Warshak, 631 F.3d 266, 283-88 (6th Cir. 2010) (defendant has a reasonable expectation of privacy in emails stored remotely on third party server). In light of the facial invalidity of defendant's challenge to the search warrant for the e-mails, the court will accept defendant's plausible assertion that he has standing.

[9] Defendant also asserts that the investigating agent did not disclose to the Magistrate Judge the fact that he had discussed defendant's European travel with defendant's counsel. The relevance of this fact is not at all clear, and in any event, it does not undermine the probable cause established in the affidavit.

6

the informant's statement that the residence "is vacant and has been largely emptied" of his personal belongings. Dkt. No. 158 at 41. However, it is clear from the affidavit and the agent's statement of corroboration,[10] that the point of including this statement is to notify the Magistrate Judge that the residence was being prepared for sale.[11] Yet defendant concedes that the house was for up for sale. Dkt. No. 158 at 9. Given this concession and no further explanation from defendant, it is not clear what is the relevance of whether the defendant cleared out his belongings before the residence was sold, or not.[12]

Second, defendant asserts that Salyer did not own the residence containing his furnishings, guns, artwork, paintings and other personal belongings. But defendant does not explain why his ownership is relevant in the face of the evidence that defendant lived there, stored his belongings, guns and artwork there, and that it was now for sale.

Third, defendant asserts that the informant was engaged in a dispute with defendant and had been arrested by local police for

---

[10] The agent corroborated the informant's statement by checking with public databases to see that the property was for sale.

[11] Defendant does not otherwise explain the significance of the informant's statement, leaving the court to speculate that defendant challenges the inference that defendant was moving out of it or that the house was for sale.

[12] Defendant faults the investigating agent for not making a road trip to see if the residence had been stripped bare. Such a trip was not necessary in light of the agent's corroboration of the fact that the property was for sale.

taking guns and artwork out of defendant's residence, thus undermining her credibility. It appears to be conceded that the informant was arrested for this, and that this information was not included in the affidavit for the search warrant. The government seems to argue that the investigating agent did not know about the arrest, while defendant argues that the agent must have known about it. However, even assuming the worst of the informant's motives and that the agent improperly omitted the arrest and the facts behind it, the fact is that the material information the informant provided to the agent was sufficiently corroborated, by e-mail print-outs, public records, a real estate contract, an invoice from a European relocation specialist and bank records.[13] It is not reasonable to conclude that the authorizing judge would have discounted all this evidence simply because the person who pointed the investigator to it had an axe to grind.

**III. CONCLUSION**

Defendant has failed to show that the authorizing judge erred in issuing the search warrants discussed above.[14] Accordingly,

---

[13] The informant's credibility was not completely irrelevant, since her statements to the agent – concerning defendant's travel to France, his placing his U.S. residence up for sale, his signing a contract for an apartment in Paris, his transfer of money to Europe and his request for information about countries without extradition treaties – certainly would have affected the decision of the authorizing judge. However, even without these statements, the agent had probable cause to believe that defendant planned to leave the country and not return, based upon the documents that corroborated the informant's statements.

[14] There is no basis for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

8

defendant's motions to suppress the evidence obtained through the warrants (Dkt. No. 151 & Dkt. No. 157), are **DENIED.**

IT IS SO ORDERED.

DATED: February 9, 2012.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT